

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-25-2005

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2199

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Chen v. Atty Gen USA" (2005). *2005 Decisions.* Paper 355.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/355

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 04-2199

———

SONG OENG CHEN;
*BETTY,
Petitioner

*(Dismissed per Clerk's Order of 2/22/05)

v.

**ALBERTO R. GONZALES, ATTORNEY GENERAL
OF THE UNITED STATES,
Respondent

**(Substituted pursuant to Fed. R. App. Rule 43(c))

———

Petition for Review of the Order
of the Board of Immigration Appeals
(A95-147-378; A95-147-379)

———

Submitted Under Third Circuit LAR 34.1(a)
October 24, 2005

Before: SLOVITER, FISHER, Circuit Judges,
and THOMPSON, District Judge***

(Filed October 25, 2005)

———

*** Hon. Anne E. Thompson, United States District Judge for the District of New
Jersey, sitting by designation.

OPINION

SLOVITER, Circuit Judge

Petitioner Song Oeng Chen ("Chen") seeks review of a final order issued by the Board of Immigration Appeals ("BIA") which affirmed, without opinion, the determination of the Immigration Judge ("IJ") denying petitioner's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction under § 242(a)(1) of the Immigration and Nationality Act, 8 U.S.C. § 1252(a)(1).

Petitioner entered the United States as a non-immigrant visitor for pleasure with authorization to remain for a temporary period not to exceed June 7, 2001. She remained beyond that date without authorization from the Immigration and Naturalization Service ("INS"). Petitioner conceded removability and applied for asylum, withholding of removal, and protection under the CAT. She claims that she is entitled to asylum because she has suffered past persecution and has a well-founded fear of future persecution if she returns to Indonesia, her native country.

To establish past persecution and entitlement to asylum, an applicant must show (1) an incident (or incidents) that constituted persecution; (2) that occurred on account of one of the statutorily protected grounds; and (3) that was or were committed by the government or forces the government is either unable or unwilling to control. See Berishaj v. Ashcroft, 378 F.3d 314, 323 (3d Cir. 2004). The applicant claims that she

qualifies for asylum because she is a member of the ethnic Chinese minority and is part of the Christian minority. Both ethnicity and religion are listed as statutory grounds to support eligibility for asylum provided the applicant has shown that she suffered past persecution and has a well-founded fear of future persecution if she is returned to her native country.

In this case, the IJ rejected petitioner's claim because he found that petitioner lacked credibility. He made that finding based on a series of discrepancies in petitioner's testimony as compared with her affidavit and supplemental affidavit.

Although some of the discrepancies referred to by the IJ appear to be relatively minor, when viewed in totality they were sufficient to warrant the adverse credibility assessment. Petitioner bases her asylum claim on her allegation that she and her family members were teased or insulted and told to go back to China. Petitioner must base her claim on her own experiences, not that of her brother.

Most of the events that petitioner relies on began when her brother was invited to a party at the next door home of Mr. Hamid, a devout Muslim. Petitioner stated that there were some government people there. In her affidavit, petitioner stated the invitation was proffered by Endang, Mr. Hamid's son. In her testimony petitioner claimed that Endang was a girl, and Mr. Hamid's daughter, a discrepancy that the IJ noted.

Petitioner testified that she had no contact with the Hamid family next door

3

beyond just saying hello.  In contrast, her supplemental affidavit states that the Hamids gave food to her family at the end of the Ramadan season, and her family gave the Hamids gifts at Christmas and Easter, another discrepancy noted by the IJ.  In her direct testimony, petitioner presented herself as passive when her brother was inside the Hamid residence but on cross-examination she stated that she climbed a ladder to view what was happening inside the Hamid residence, that she saw that her brother was tied up and that he was slapped in the face with a gun.  Originally her affidavit stated that she heard one of the people inside the Hamid's home say to her brother that his parents are dead and that he should go back to China but on cross-examination she admitted she did not hear this after all, all of which was noted by the IJ.  Petitioner testified that she paid $500 to the police within three hours after she made her first inquiry and that her brother was immediately released; her supplementary affidavit states that her brother was not released until the next day after the $500 was paid.

Finally petitioner's affidavit stated that when she went to the police to find her brother the police ordered her to strip down until she was naked, a "fact" she mentioned in her interview with the asylum officer.  However, in her testimony she disavowed that this had ever happened.  Petitioner testified that her brother died on April 19, 1995 purportedly of the injuries suffered when he was beaten by the police.  In her supplementary affidavit stated that her brother died in March 1995.  The IJ noted that petitioner has not been able to explain the discrepancy.  The IJ specifically stated that

4

these discrepancies were significant.

The Government notes that petitioner's affidavit had been submitted within a couple of weeks of the hearing. Perhaps most significant, petitioner's supplemental affidavit does not make any mention about the fact that her brother was taken to the police, whereas on direct examination she testified that Mrs. Hamid told her that her brother had been taken to the police, and that she thereafter paid the $500 ransom to the police for her brother's release.

Whereas each of the discrepancies, taken alone, might not support an adverse credibility determination, the testimony taken as a whole provides substantial evidence to support the IJ's adverse credibility determination. Because the Real ID Act, 8 U.S.C. § 1158(b)(1), which affects the standard of review of adverse credibility determinations, did not become effective until May 11, 2005, after the time of petitioner's testimony, we review adverse credibility determinations under the substantial evidence standard. He Chun Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). Under this highly deferential standard of review, we will uphold the credibility determination of the IJ unless "any reasonable adjudicator would be compelled to conclude to the contrary." Id. at 222. Thus, adverse credibility determinations by the IJ will be upheld to the extent that they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Abdulrahman v. Ashcroft, 330 F.3d 587, 597 (3d Cir. 2003).

The record contains no support for petitioner's allegations that she suffered past

persecution. She argues in her brief that she suffered "humiliation and disruption" to her life and religious practices, but she offers no record support of any such contention. The principal allegations with respect to governmental action involve not petitioner but her brother, who was allegedly beaten by the police. The only allegations that concern petitioner directly related to her being told to pay a $500 bribe to have her brother released from prison. Petitioner does not allege that she was ever imprisoned or threatened with imprisonment. Her showing does not amount to past persecution, a burden that was hers to meet.

We can accept petitioner's argument that there are many equities which weigh in favor of a positive exercise of discretion by this court because she has spent a significant period of time in this country, she obeys the laws, and has been a person of good moral character. Nonetheless, we are obliged to follow the statutory standard, and the IJ's determination that petitioner was not credible is supported by substantial evidence. We will sustain the adverse credibility determination made by the IJ, and adopted by the BIA in its affirmance without opinion.

For the reasons set forth above, we will deny the petition for review.